**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGELIA MARIE TOLIVER,**

    **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:14-cv-925-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## I.   BACKGROUND

### A.   Procedural History

Plaintiff applied for SSI benefits on April 4, 2011, alleging an onset of disability on January 31, 2009 (R. 228-36), subsequently amended to the application date, due to diabetes, numbness, hypertension, and vision problems. R. 115-17.  Her application was denied initially and upon reconsideration. R. 163-74. Plaintiff requested a hearing, which was held on October 18, 2012, before Administrative Law Judge Pamela Houston (hereinafter referred to as "ALJ").  R. 107-30, 175.  In

a decision dated November 29, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 91-106. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on April 25, 2014. R. 90. Plaintiff filed this action for judicial review on June 16, 2014. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on February 10, 1968. R. 228. She graduated from high school and has the ability to read, speak and understand English. R. 287, 289. Plaintiff has past work experience as a cashier and cook, although the work was quite sporadic, with no earnings of more than $703 for any year from 1984 to 2012, except two (for $1,018 and $1,670), and the majority with annual earnings from $0 to $400. R. 239, 279.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of type 2 diabetes, obesity, neuropathy, vision problems, and hypertension. R. 115-17, 147, 149, 158, 256-57, 288. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diabetes mellitus with pain secondary to peripheral neuropathy and obesity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 96-97. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with tasks that are simple 1-5 steps that can be learned through a simple on the job demonstration or with 30 days of training. R. 97. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work as a cook, cashier, and dishwasher. R. 100. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a security monitor, final assembler, and

telephone solicitor. R.100-01. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 101.

Plaintiff argues what is essentially a single point of error – that the ALJ erred in not finding the vision problems in her right eye to be a severe impairment, and in evaluating her credibility regarding the vision issues. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. Vision impairment

Plaintiff argues her vision impairment is severe as it would significantly impact her ability to work. She further argues that the ALJ erred in evaluating her credibility regarding her vision problems. At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff argues that the ALJ erred by finding her vision problems were not a severe impairment. The ALJ found:

> The claimant alleged problems with vision as well (Exhibits 4F and 12F), but there is no evidence that this impairment is severe and meets the durational requirement. On November 18, 2009, she demonstrated a visual acuity without glasses of 20/70 in each eye and 20/40 combined. (Exhibit 5F) On June 16, 2011, her visual acuity without glasses was 20/70 OD, 20/50 OS and 20/40 combined. (Exhibit 9F) Recent reports document cataracts with good outcome following surgery in the left eye on April 18, 2012. (Exhibit 12F) She was referred to an ophthalmologist for surgery of the right eye. (Exhibit 12F) She testified that the surgery on the right eye was canceled due to lack of funds from the government.

R. 96.

Plaintiff argues her vision impairment is severe as it would significantly impact her ability to work. Plaintiff argues that the ALJ erred because she ignored the fact that on August 7, 2012, her unaided vision in her right eye was 20/400 and her best corrected vision was 20/200. R. 472-73. She also argues that the ALJ erred in finding her vision impairment would not meet the durational requirement of lasting or expecting to last for a continuous period of at least 12 months. Doc. 16 at 10 (citing 20 C.F.R. § 416.909). Plaintiff testified at the hearing that her right eye cataract surgery had been cancelled because she could not afford it, and the county did not have funds to pay for it. R. 96, 116. Plaintiff argues that she "was unable to get the necessary surgery to correct her vision due to lack of finances. Her vision was not going to self-correct and it would be expected to last for a continuous period of at least 12 months." *Id*. Plaintiff's additional arguments regarding the ALJ's incorrect RFC and the hypothetical are built on this argument. *Id.* at 11-12.

However, as the Commissioner points out, the medical records from Bird Eye Institute note that on October 31, 2012 – less than two weeks after Plaintiff's hearing and one month before the ALJ

-5-

reached her decision – Plaintiff had an intraocular lens implant[1] surgery to correct the cataract in her right eye, denoted as "OD: IOL."  R. 85.

A cataract—a clouding of the lens of the eye—blocks the normal passage of light through the eye. Surgery for cataracts involves removing the natural lens of the eye that contains the cataract and either replacing it with an artificial lens called an intraocular lens implant (IOL) or compensating for its absence with eyeglasses or contact lenses.  Because Plaintiff had the cataract surgery, she no longer has  the level of vision issues that she argues she maintains causing a "severe" impairment.  In fact, Plaintiff's unaided vision in each eye is 20/40 and in both eyes is 20/30. R. 85-86.  Dr. Franco noted on March 21, 2013 that Plaintiff was experiencing blurry vision but she had not filled the glasses prescription Dr. Franco provided–although she had been diagnosed with myopia, astigmatism, and presbyopia, which would make reading nearly impossible without glasses– because Plaintiff had lost it.  R. 87; R. 479 (treatment plan: "standard IOL's for distance vision and Rx [prescription] for spectacles").  Plaintiff certainly should have notified the SSA or the ALJ directly once she had had the cataract surgery in her right eye, and she certainly should have informed *her counsel* of that fact before this appeal was filed on her behalf and judicial resources were expended.

Given the foregoing, the Court need not spend much time reviewing the ALJ's determination that Plaintiff's statements were not fully credible. The argument by Plaintiff's counsel is again based on the mistaken argument that Plaintiff has not had cataract surgery on her right eye, even though she clearly has.

Plaintiff also argues that the ALJ improperly discredited her testimony as to pain. Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent

---

[1] *See* www.webmd.com/eye-health (visited on April 29, 2015).

to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ properly cited the applicable regulations and Social Security Ruling 96-7p concerning the assessment of pain. R. 97. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ articulated a reasonable basis for her determination in finding:

The record overwhelming documents active symptomatology as a direct consequence of poor compliance. In fact, at the time of her hospitalization in May 2009 for incision and drainage of right axilla abscess, she reportedly was "not always compliant with medication." (Exhibit 2F, p. 4) She "was initially on medications, but has not been

taking any medications over the last year secondary to financial difficulty. Patient also had not been checking her Accu-Check." (Exhibit 4F, p. 13).

Complicating matters, the claimant continues to smoke, there is evidence of drug use, and she has not adhered to recommended dietary intake. (Exhibits 4F) In May 2009, she reportedly continued to smoke a pack of cigarettes a day and had used cocaine. (Exhibit 4F).

On November 18, 2009, she admittedly had been out of her medications for the last three months and acknowledged smoking a half pack of cigarettes a day. (Exhibit 5F).

On June 16, 2011, "[s]he has been out of medications for the last 6 months stating that she was on Glucotrol Metformin, and Lisinopril." (Exhibit 9F, p. 1) At this time, she also reportedly smoked a pack of cigarettes a day. (Exhibit 9F) Here, Dr. Perdomo equally opined "[p]atient will benefit from weight loss, as well as better diabetes control." (Exhibit 9F, p. 2).

On August 4, 2011, she reportedly "has not seen a doctor in 2 years, out of all medications." (Exhibit 10F, p. 2).

On February 9, 2012, she reportedly missed doses frequently, was following a poor diet and consuming foods high in fats and carbohydrates, did not exercise three or more times a week, and was not checking blood sugars at home. (Exhibit l lF).

Recently on August 12, 2012, the claimant presented to emergency room with symptoms of bronchitis, but was noted to be a smoker, clearly contradictory to testimony that she stopped smoking 6 months prior to the hearing. (Exhibit BF) She had also reportedly ran out of insulin for her diabetes. (Exhibit 13F).

Interestingly, the record documents hypertension as well, requiring medication management and monitoring, but non-severe despite that fact that the claimant has been repetitively noncompliant with taking medication. (Exhibits 4F, SF, 8F, 9F, 10F, & 11F).

Certainly, the fact that claimant did not have the means to obtain her medication is not something that typically would count against her in this matter. However, the evidence supports ongoing tobacco abuse that claimant did apparently have the means to support. Claimant is a younger individual with a high school education, with prior work as a cook, cashier and dishwasher- all unskilled to low semi-skilled jobs. She was able to use public transportation, interact with her grandchildren in their activities, bathe and dress independently, and watch television. Claimant has a very poor earnings record, and would "earn" more by obtaining Social Security benefits. (Exhibit 3D) Low earnings can suggest an overall aversion to work activity, as opposed to being unable to work due to a physical or mental disability. This is persuasive because claimant reported that she stopped work, not because of her impairments, but because of other reasons. (Exhibit 11E).

R. 98-99.

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints including her lack of compliance with prescribed treatment and medications. The ALJ's reasons included inconsistencies between her reports and the examination findings, as well as contemporary cocaine use, and a very poor earnings record. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Moreover, the ALJ's reasons are supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on May 6, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record